Judge N.R. SMITH,
concurring:
Given the assumption made by both the majority and the dissent — that the Forest Service’s action (the renewal of a special use permit) constituted government action that could violate the Establishment Clause — I agree with the majority. Under both the Lemon and Van Orden tests, the Forest Service did not violate the Establishment Clause. However, I write separately, because the assumption is incorrect. The Forest Service’s renewal of a special use permit for an existing monument does not constitute government speech.
“There is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect.” Bd. of Educ. of Westside Cmty. Schs. v. Mergens, 496 U.S. 226, 250, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990). When a private speaker utilizes public property as a forum for expression, government allowance of that expression does not violate the Establishment Clause as long as the expression is permitted in a “non-discriminatory manner.” See Kreisner v. City of San Diego, 1 F.3d 775, 776 (9th Cir.1993). In short, “[rjeligious expression cannot violate the Establishment Clause where it (1) is purely private and (2) occurs in a traditional or designated public forum, publicly announced and open to all on equal terms.” Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 770, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995).
The Knights’ decision to place a statue of Jesus at the Big Mountain Ski Resort was purely private expression. So, too, is the Knights’ ongoing maintenance and support of the monument. The only involvement that the government has had in relation to the monument is (1) the issuance of a special use permit in 1953, and (2) reissuance of the permit in 1990, 2000, and 2012. However, the allowance of private speech on public property does not necessarily turn the private speech into government speech. See id. at 761-63,115 S.Ct. 2440; Kreisner, 1 F.3d at 784-85.
The key question is whether the Forest Service land has constituted a traditional or designated public forúm, publicly announced and open to all on equal terms. See Capitol Square, 515 U.S. at 770, 115 S.Ct. 2440. History evidences that it has. From 1942 until 1998 (when the Forest Service substantially overhauled its regulations governing special use permits), the Forest Service had a general policy of granting special use permits as long as the permitees “complied] with all State and Federal laws and all regulations of the Secretary of Agriculture relating to the national forests and ... conducted] themselves in an orderly manner.” 36 C.F.R. § 251.1 (1944). During this time period, nearly seventy permanent monuments were erected on Forest Service land, with special use permits being issued to a wide variety of groups, corporations, and individuals. From 1942 to 1998, there can be no question that Forest Service land quali *956 fied as a designated public forum. See Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469, 129 S.Ct. 1125, 172 L.Ed.2d 858 (2009) (“[A] government entity may create ‘a designated public forum’ if government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose.” (citation omitted)). FFRF has not provided any evidence that the Forest Service limited access to the its land in a discriminatory way; in fact the record demonstrates that the land was open to all on equal terms.
Additionally, the Forest Service’s renewals of the Knights’ special use permit were done in accordance with neutral, non-discriminatory criteria. Renewals of existing special use permits are governed by 36 C.F.R. § 251.64. That regulation states, “When a special use authorization provides for renewal, the authorized officer shall renew it where such renewal is authorized by law, if the project or facility is still being used for the purpose(s) previously authorized and is being operated and maintained in accordance with all the provisions of the authorization.” Id. (emphasis added). The Knights’ permit complied with these requirements. For the reasons explained in the majority decision, renewal was lawful. Further, the monument was still being used for the purpose previously authorized and was operated and maintained in accordance with the permit. That all permit renewals must satisfy these same, content-neutral criteria demonstrates the neutrality of the Forest Service’s decision.
Further, the Forest Service’s comments during the renewal process (that such permits would not be granted under the new regulations and that permits for other proposed monuments had been rejected) did not display favoritism for the Knights, but merely reflected the change in the regulations that occurred in 1998. Since 1998, the grant of new special use permits has been governed by 36 C.F.R. § 251.54, which requires (amongst a long list of other things) that a new permit “will not create an exclusive or perpetual right of use or occupancy.” Id. § 251.54(e)(l)(iv). The Forest Service Handbook[1] explains that to satisfy that criterion, the proposed use should “not in effect grant title to Federal land to an authorization holder or ... create the appearance of granting such a right.” FS Handbook 2709.11, ch. 10, sec. 12.21, para. 4 (2013). As an example of a use that may violate this criterion, the Handbook provides “[cjemeteries, monuments, or other memorial's.” Id. Therefore, obtaining a permit to place a new monument under the current regulations would likely be extremely difficult, if not impossible. However, this criterion does not apply to renewals of existing special use permits. As explained above, the renewal of existing permits must only comply with the neutral requirements of 36 C.F.R. § 251.64. Therefore, that the Forest Service would not grant a new permit to the Knights under the current regulations is irrelevant. Like all other existing special use permit holders, the Knights only needed to comply with neutral regulations to maintain their special use permit. Thus, the Forest Service’s renewal of the Knights’ permit did not evidence a bias in favor of religion.
Finally, FFRF argues that Pleasant Grove City, Utah v. Summum prevents us from conducting a forum analysis in this case, because forum analysis does not apply to permanent monuments on public *957 property. To support that argument, FFRF relies on a portion of a sentence from Summum which stated, “[Fjorum analysis simply does not apply to the installation of permanent monuments on public property.” Summum, 555 U.S. at 480, 129 S.Ct. 1125. However, FFRF takes the language from Summum out of context. Instead, the Court said:
To be sure, there are limited circumstances in which the forum doctrine might properly be applied to a permanent monument — for example, if a town created a monument on which all of its residents (or all those meeting some other criterion) could place the name of a person to be honored or some other private message.- But as a general matter, forum analysis simply does not apply to the installation of permanent monuments on public property.
Id. This language did not create a categorical rule against forum analysis when dealing with permanent monuments. Further, this is one of those limited circumstances where forum analysis is 'appropriate. Rather than dealing with a 2.5-acre city park, which may have a difficult time accommodating permanent monuments from any and all individuals or groups that may wish to utilize the forum, we are dealing with the Forest Service’s 193-million acres, which does not have the same constraint. Therefore, the conclusion that the Forest Service’s land constituted a designated public forum does not conflict with Summum.

. The Forest Service Handbook is available at http://www.fs.fed.us/im/directives/dughtml/ fsb_l.html.